IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

LONALD W. HEEMAN,            )
                             )
    Plaintiffs,              )
                             )
    v.                       )
                             )
CAROLYN W. COLVIN,           )        NO. 14-3200
Commissioner of Social Security, )
                             )
    Defendant.               )

OPINION

RICHARD MILLS, U.S. District Judge:

Plaintiff Lonald W. Heeman has filed a Complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Decision of the Commissioner of Social Security. Pending before the Court are the Plaintiff's Motion for Summary Judgment and the Defendant Commissioner's Motion to Remand.

I.

The fourth sentence of 42 U.S.C. § 405(g) provides, "The Court shall have power to enter, upon the pleadings and the transcript of the record, a judgment affirming, modifying, or reversing the decision of the

Commissioner of Social Security, with or without remanding the cause for a rehearing."

The Plaintiff opposes the Defendant's Motion to Remand and notes that § 405(g) authorizes the Court to reverse without remanding the action. The Plaintiff claims that the record in this case is fully developed and remand would serve no useful purpose. His initial claim for benefits alleged an onset date of July 18, 2001. The Plaintiff asserts, therefore, that he has been disabled for almost fifteen years. He has been pursuing his claim for more than eleven years. The Plaintiff states he is indigent, in pain and depressed.

The Plaintiff has had two hearings before Administrative Law Judge David Thompson. The Plaintiff states that at the second hearing following the remand, ALJ David Thompson asked the Plaintiff, who suffers from major depression with suicidal ideation and a history of self-cutting, why he doesn't kill himself followed by asking what meaning his life has. ALJ David Thompson called the Plaintiff a tax cheat and berated him and eventually issued a second unfavorable decision.

The Plaintiff appealed that decision to this Court. See Heeman v. Astrue, Case Number 12-cv-3165. The Commissioner requested that the Court remand the Plaintiff's case. Although the Plaintiff opposed the Commissioner's motion to remand, the Court allowed the motion and directed the Commissioner to assign the matter to a new administrative law judge to conduct a de novo hearing.

A third hearing was held before ALJ Barbara Welsch, who issued another unfavorable decision. The Plaintiff has already testified three times regarding his limitations. He contends that a remand for a fourth hearing to testify, submit additional evidence and make further arguments would serve no purpose. The record consists of thousands of pages of documents relating to the three hearings. The Plaintiff states he has made the same argument to the administrative law judges three different times. In once again moving for a remand, the Defendant is agreeing for the second time that the administrative law judge did not properly evaluate the evidence.

The Plaintiff alleges that the Social Security Administration, through two administrative law judges, has demonstrated a clear disregard for the

law and directions on remand. Moreover, he has not received a fair hearing.

The Plaintiff alleges that, when a claimant meets his burden of proof and demonstrates through documentation that his impairments either meet a Listing at Step Three of the sequential five-step evaluation or his residual functional capacity leaves him unable to perform any work in the national economy at Steps Four and Five, then the Court should reverse with directions that the Social Security Administration award benefits.

The Plaintiff contends that because no useful purpose would be served by further administrative proceedings, the record has been fully developed and there is not sufficient evidence to support the ALJ's conclusion, the decision should be reversed with instructions to award benefits.

II.

(A)

The Plaintiff is 51 years old and has a high school education. The Plaintiff last worked in 2004 or 2005 for Dot Foods as a chaser which consisted of stacking food on pallets. He did that for just over one year.

The Plaintiff also worked as a landscaper for Illinois Forest Product, laying sod, brick sidewalks and planting trees and shrubbery. He was a laborer building dykes in a flood relief program and mixed chemicals for Con-Agra and also had a security job. He sprayed chemicals for Tank Cleaners and also worked on a kiln floor.

The Plaintiff alleges a number of medical problems, including failed back syndrome, degenerative disc disease of the cervical and lumbar spine, chronic pain, COPD/chronic bronchitis, osteoporosis and major depression and anxiety with suicidal ideation and a history of cutting and burning himself.

The ALJ's first unfavorable decision was issued on February 22, 2008, and the Appeals Council denied the Plaintiff's appeal on May 29, 2009.

The Plaintiff applied for benefits again on April 6, 2010, and was denied. He moved for reconsideration which was denied on January 27, 2011.

This Court affirmed the Social Security Administration's decision. On March 25, 2011, the United States Court of Appeals for the Seventh

Circuit reversed and remanded the Plaintiff's case. On September 13, 2011, the case was remanded to the ALJ.

The Plaintiff's second application was consolidated into the remand. On April 9, 2012, the Plaintiff's claim was denied by the same ALJ who issued the first decision. The Plaintiff appealed to this Court.

On March 22, 2013, the Social Security Administration moved to have the claim remanded, requesting that the case be assigned to a different ALJ who will allow the Plaintiff to appear at a supplemental hearing to submit additional evidence. See Case No. 12-3165, Doc. No. 16. The motion noted that the decision should account for all of the mental limitations that are credibly supported by the record and "explain the weight assigned to all medical source opinions and provide reasons for rejecting all or part of any such opinion." See id. at 1. The motion further stated:

> If the ALJ finds that the claimant's activities indicated an ability to perform work-related activities inconsistent with his subjective reports, the ALJ should explain how the claimant's activities indicate greater functional ability than claimant admits. If the ALJ finds inconsistencies between the claimant's testimony or report to the agency and his reports to medical

sources, the ALJ should ask the claimant to provide an explanation for the inconsistencies.

See id. at 1-2. Over the Plaintiff's objection, the case was remanded for a third hearing before a different administrative law judge.

The hearing was held on March 5, 2014. On April 11, 2014, the ALJ denied the Plaintiff's claim, concluding that he had not been disabled within the meaning of the Social Security Act at any time from July 18, 2001 through the date of the decision. The Plaintiff filed this Complaint with the Court.

(B)

The ALJ found that the Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine (and other defects of the cervical spine), osteoporosis, depression and anxiety. However, the ALJ determined that Plaintiff did not establish that he has an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. The ALJ further found that Plaintiff has the residual functional capacity to perform light sedentary work with the following additional limitations: (1) he should

not climb ladders, ropes, scaffolds, or work at unprotected heights or around unprotected hazardous machinery; (2) he should not perform jobs that require rapid or repetitive head turning; (3) he should not perform more than occasional stooping; (4) he should not work in an environment with a concentrated exposure to respiratory irritants; and (5) he has moderate limitations in concentration, persistence and/or pace and social functioning so he is limited to jobs that are simple, routine, and repetitive with no complex or detailed tasks and no interaction with the public.

The ALJ found that Plaintiff's subjective statements regarding his symptoms were not credible and determined that certain medical and other evidence, such as his daily activities, suggested that Plaintiff was not physically disabled to the extent that he is unable to work. The ALJ stated she was giving more weight to the objective medical evidence instead of the Plaintiff's subjective statements. Additionally, the ALJ adopted the opinions of the State Agency physicians in determining that Plaintiff was not disabled due to his mental status.

The ALJ gave did not give significant weight to the Plaintiff's treating

physicians, Linda Forestier, M.D., or Marshall Robert, M.D., and instead found that the opinions of the State Agency doctors that Plaintiff is not disabled are supported by the record.

Although the ALJ determined that Plaintiff could not do any past relevant work, she did conclude based on the vocational expert's testimony that Plaintiff can do other work, including light work as a collator operator and mail sorter and sedentary work as a document preparer and call-out operator. The ALJ concluded that the additional limitations noted by the Plaintiff's representative were not supported by the record.

(C)

The Plaintiff contends that the ALJ's decision is not supported by substantial evidence due to several flaws which, he alleges, undercut her conclusions at Step 4 and Step 5. Specifically, the Plaintiff asserts that the decision does not comply with the remand Order from this Court, wherein it agreed that the second ALJ decision had not complied with the Seventh Circuit's mandate. The Plaintiff alleges the ALJ's decision is deficient in the following respects:

9

(1) The ALJ again found that only "objective" medical signs could corroborate the Plaintiff's reports of pain, while dismissing objective medical signs that corroborated such pain, failing to take into account the Plaintiff's efforts to obtain relief from pain and failing to take into account the Plaintiff's doctor's responses to his allegations of pain;

(2) The ALJ did not fully account for all of the Plaintiff's mental limitations;

(3) The ALJ did not adequately explain the weight assigned to all medical source opinions and her reasons for rejecting treating source opinions is, therefore, not supported by substantial evidence;

(4) The ALJ did not explain how the Plaintiff's activities indicated greater functional limitations than he alleged;

(5) The ALJ did not address the alleged inconsistencies or inquire about them.

The Plaintiff further asserts that the ALJ does not address substantial evidence that supports a finding that Plaintiff cannot work in the national economy. He further contends that the ALJ's credibility determination is

patently erroneous.

The Court has carefully reviewed ALJ Barbara Welsch's Decision, which does seem to dismiss or minimize the Plaintiff's subjective complaints by determining, in a somewhat conclusory fashion, that they are not consistent with the objective medical evidence. The ALJ stated:

> The undersigned considered the claimant's history of what was termed by the court as "significant treatment" in assessing his credibility. He has had physical therapy (and was noted to miss sessions), had a spine stimulator (apparently for just a few days) and used pain medications. This does not seem to the undersigned to be other than relatively conservative treatment given the relatively large body of treatment options. But regardless of whether his treatment is determined to be significant or not, he has not met his burden of demonstrating greater limitations than found in the residual functional capacity herein.

Doc. No. 10-2, at 1567. As the Plaintiff alleges, the ALJ did not consider all of the objective evidence and the decision does not account for the consistency and persistence of his complaints, as treated by doctors for fourteen years. Moreover, the ALJ's decision appears to minimize the Plaintiff's behavior of slicing and burning his own flesh as means of self-treatment.

Therefore, the Court concludes that the ALJ has failed to address some of the evidence in the record which is consistent with the Plaintiff's allegations of pain. "An ALJ cannot rely only on the evidence that supports her opinion." Bates v. Colvin, 736 F.3d 1093, 1099 (7th Cir. 2013). While the ALJ need not cite every piece of evidence, "she cannot ignore a line of evidence that suggests a disability." Id.

Accordingly, the Court concludes that the ALJ's determination that Plaintiff has the residual functional capacity to do light or sedentary work is not supported by substantial evidence.

(D)

The Court further concludes that in finding moderate limitations in concentration, persistence and/or pace and social functioning such that Plaintiff was limited to jobs that are simple, routine and repetitive, with no complex or detailed tasks and no interaction with the public, the ALJ did not fully account for the Plaintiff's mental limitations. As the Plaintiff notes, the Seventh Circuit has rejected the notion that a residual functional capacity finding limiting an individual to simple, routine tasks and limited

interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace. See Varga v. Colvin, 794 F.3d 809, 814-15 (7th Cir. 2015).

Although the ALJ acknowledges that cutting oneself is not normal behavior, she goes on to minimize that act. The Plaintiff notes that during the hearing, when his counsel asked the Plaintiff to show the ALJ the burn marks on his body, the ALJ quickly cut him off by stating, "No, I don't look at, I don't look at anything." Counsel then asked to see the burn marks and the ALJ stated, "That's a medical – if the medical doctor notes it, that's medical evidence–not something that you–" Counsel continued to inquire about the burn marks. The Plaintiff testified that he has about 20-30 burn marks on one arm and 6 to 8 on the other, which are healed over scabs of about an inch by half an inch. The Plaintiff testified he engaged in this activity due to pain and things that happened in his life as a child, plus he uses it to transfer the pain from one place to another.

Although the ALJ had no interest in this information she did question whether, based on the medical evidence, the Plaintiff really needed to lay

down in the backseat on the drive home from a 2008 hearing, as the Plaintiff and his wife had stated. This is illustrative of a tendency to cherry pick certain (not particularly probative) evidence, which an administrative law judge is not permitted to do. See Yurt v. Colvin, 758 F.3d 850, 859 (7th Cir. 2014).

Additionally, the ALJ generally gave the Plaintiff's higher Global Assessment of Functioning (GAF) more weight than those which were lower. She reports on a number of GAF scores ranging from 55 to 60 as part of an unremarkable mental status and consistent with the ALJ's finding as to residual functional capacity. The ALJ dismisses the lower GAF scores or finds that they are not consistent with other evidence even though, as the Plaintiff alleges, he had more than twenty GAF scores ranging from 45 to 50 and sixteen GAF scores ranging from 55 to 65.[1]

---

[1] According to the DSM-IV, which was in place until the DSM-V in 2013, GAF scores were used to rate the social, occupational and psychological functioning of adults. Scores ranging from 41-50 indicated serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g. no friends, unable to keep a job, cannot work). Scores ranging from 51-60 indicated moderate symptoms (e.g. flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational or

As the Plaintiff notes, although an ALJ need not give weight to any individual GAF scores, see Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010), the ALJ cannot simply fail to consider evidence favorable to the Plaintiff. See Yurt, 758 F.3d at 860 ("the problem here is not the failure to individually weigh the low GAF scores but a larger general tendency to ignore or discount evidence favorable to Yurt's claim, which included GAF scores from multiple physicians suggesting a far lower level of functioning than captured by the ALJ's hypothetical and mental RFC."). In this case, the Plaintiff's lower GAF scores are consistent with other evidence regarding his mental functioning which is favorable to his claim. The ALJ did not fully consider and account for these limitations.

Based on the foregoing, the Court concludes that the ALJ did not fully account for the Plaintiff's mental limitations and her residual functional capacity determination is not supported by substantial evidence.

The Court also concludes that the ALJ did not adequately explain the

---

school functioning (e.g. few friends, conflicts with peers or co-workers).
   The record shows there are three GAF scores of 45, two GAF scores of 46; one GAF score of 48, fourteen GAF scores of 50, eight GAF scores of 55, six GAF scores of 60 and two GAF scores of 65.

weight assigned to all medical opinions and her reasons for rejecting the treating source opinions of Dr. Robert and Dr. Forestier are not supported by the substantial evidence. Some of the objective medical evidence did support the opinions of the treating physicians.

The Court further concludes that the ALJ failed to explain how the Plaintiff's daily activities suggested greater functional abilities than he alleged.

Additionally, the ALJ fails to address that substantial evidence supports a finding that Plaintiff cannot perform any work in the national economy. There is evidence in the record that Plaintiff suffered from pain that was treated over the course of years but never entirely controlled. Because the ALJ did not consider the Plaintiff's ability to perform work on a regular, sustained and continuing basis, the finding that he is capable of performing work that exists in significant numbers in the national economy is not supported by substantial evidence.

The ALJ's credibility determination is also erroneous. As this Court has noted, the ALJ's finding that Plaintiff was not credible is based in large

part on the ALJ's tendency to consider only certain evidence that bolsters her conclusion while ignoring objective evidence that favors the Plaintiff. The Court earlier noted the ALJ refused to look at the burn marks on the Plaintiff's arms because they were not part of the medical records. The Plaintiff notes that the previous administrative law judge held it against the Plaintiff that he did not offer to show him the scars on his arm, even though that ALJ never asked to see the bandages or cuts. When the standards evolve in that manner, it should not be held against the claimant for social security benefits.

### III.

For all of these reasons, the Court concludes that the ALJ's Decision is erroneous. The Court further concludes that yet another remand would serve no purpose, given the repeated errors in the ALJ's Decisions. Based on the Court's statutory authority to reverse without for remanding another hearing, the Court will reverse and order the grant of immediate benefits pursuant to 42 U.S.C. § 405(g).

Ergo, the Plaintiff's Motion for Summary Judgment [d/e 14] is

ALLOWED.

The Defendant's Motion to Remand [d/e 16] is DENIED.

Because the record is fully developed, the Court finds that an additional remand for further proceedings would serve no useful proceedings but would merely cause delay.

Accordingly, the decision of the Commissioner is hereby REVERSED and this case is REMANDED, pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner with directions to compute and award benefits to the Plaintiff dating to his onset date of July 18, 2001.

Upon the entry of Judgment, this action shall be terminated.

ENTER: January 15, 2016

        FOR THE COURT:

                              /s/ Richard Mills
                              Richard Mills
                              United States District Judge